E-filing

DONALD AMAMGBO, ESQ.
AMAMGBO & ASSOCIATES
7901 Oakport Street, Suite 4900
Oakland, CA 94621
Telephone: (510) 615-6000
Facsimile: (510) 615-6025

REGINALD TERRELL, ESQ.
THE TERRELL LAW GROUP
Post Office Box 13315, PMB #148
Oakland, California 94661
Telephone: (510) 237-9700
**Facsimile:  (510) 237-4616**

Attorneys for Plaintiff

**FILED**

JUL  2 4 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIAIA

ADR

BOLAJI OLABODE, individually and On
Behalf of Himself and All Others Similarly
Situated,

          Plaintiff,

vs.

GOOGLE INC, a Delaware corporation,

          Defendants.

No. **C09-03414**

CIVIL - CLASS ACTION

JURY TRIAL DEMANDED

JL

     Plaintiff, BOLAJI OLABODE, and ("Olabode") alleges, individually and on

behalf of the class described below, and upon information and belief, except as to

allegations specifically pertaining to it, which are based on personal knowledge, as

follows:

**I.    SUMMARY OF CLAIMS**

     1.    This case is about Defendant Google's fraudulent, unfair and deceptive business

practices in connection with its AdWords advertising program ("AdWords"). Olabode brings this case both individually, and on behalf of a similarly situated class, against Defendant Google, Inc. ("Google") for breach of contract, breach of duty of good faith and fair dealing, violations of Business Professions Code Sections 17200 and 17500 and unjust enrichment.

**II.     PARTIES**

2.     This case is about Defendant Google's fraudulent, unfair and deceptive business practices in connection with its AdWords advertising program ("AdWords"). Olabode brings this case both individually, and on behalf of a similarly situated class, against Defendant Google, Inc. ("Google") for breach of contract, breach of duty of good faith and fair dealing, violations of Business Professions Code Sections 17200 and 17500 and unjust enrichment.

3.     Defendant Google Inc.   ("Google") is a publicly held corporation that was incorporated in California in September 1998 and reincorporated in Delaware in August 2003. Google's headquarters are located at 1600 Amphitheatre Parkway, Mountain View, California 94903.  Defendant Google's website is located at www.Google.com.  In 2007, Google's total revenue was approximately 16.6 billion, 99% of which was derived from Internet based advertising services offered through AdWords.

**III.    JURISDICTION AND VENUE**

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. &1332(d) in that this is a civil action filed under Federal Rule of Civil Procedure 23 and Plaintiff and other class members are citizens of a state different from Google. The aggregate amount in controversy exceeds $5,000,000,.00, exclusive of interest and costs, and there are more than 100 class members 28 U.S.C.  &1332(d) (2), (6).

5.     Venue is proper in the Northern District of California Pursuant to 28 U.S.C.&1391(a) in that: (1) Google resides in this judicial district; (2) a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district; and (3) Google is subject to jurisdiction in the Northern District of California.

6.     No other forum would be more convenient for the parties and witnesses to litigate

this action. Defendant Google is a resident of this judicial district and a substantial amount of the evidence and witnesses are located in this judicial district.

## IV.   FACTS

### A.   General Background

7.   Google is the world's single largest online marketing/advertising business in the world. According to Google:  "There's no larger network for contextual advertising in the world." https://adwords.google.com/select/afc.html.

8.   The  "AdWords Advertising Program"   ("AdWords")  is  Google's  primary advertising program and the source of over 98% of its annual revenue.  In 2004, 2005, 2006, and 2007 Defendant Google generated approximately 99% of its annual revenue from its AdWords advertisers.

9.   Google's advertising network ("Google Network") reaches over 86% of Internet users worldwide.  http://adwords.google.com/support/bin/answer.py?answer=6119   In attracting AdWords advertisers to contract for participation in AdWords, Defendant Google represents its "reach" as follows:

| Country | Unique Reach |
|---|---|
| Germany | 89% |
| Japan | 86% |
| France | 79% |
| United Kingdom | 75% |
| United States | 76% |
| Global | 75% |

**Source: comScore Networks machine-based panel**

**https://adwords.google.com/select/afc.html**

10.   Olabode and the class are "Adwords advertisers" that have contracted with Google to participate in the AdWords advertising program and display their advertisements on the Google Network.

**B.    Google Network**

11.    The Google Network, also referred to as the Google AdSense Network, is the association of individuals/entities that collectively provide the internet locations where AdWords advertisements are displayed and monetized.  The Google Network consists of : (1) Google; (2) Google Search Network participants (America Online, CompuServe, Netscape, AT&T WorldNet, EarthLink, Sympatico, and others);(3) Google Content Network participants (New York Post Online Edition, Mac Publishing (includes Macworld.com, Java World, LinusWorld), HowStuffWorks, and others); (4) Google Domain Network participants (Sedo.com, Oversee.net and others); and (5) Google AdSense Network participants.

12.    The Google Ad Sense program pays participants for AdWords ands monetized on their sites. Google Ad Sense consists of the following different programs:  Ad Sense for Content, Ad Sense for Search, Ad Sense for Mobile, Ad Sense for Video, Ad Sense for Domains and Adsense for Errors.

13.    *Ad Sense for Content:*  Ad Sense Network partners that contract with Google to allow AdWords Advertisements to be placed/displayed on content based WebPages under their ownership, license, registration, and or other control.  As explained by Google on its website: "The Google content network comprises hundreds of thousands of high-quality websites, news pages, and blogs that partner with Google to display targeted AdWords ads. When you choose to advertise on the content network, you can expand your marketing reach to targeted audiences-- and potential customers--visiting these sites every day.  There's no larger network for contextual advertising in the world."  It includes, but is not limited to the following individuals/entities"

https://adwords.google.com/select/arc..html

14.    *Ad Sense for Search:*  Ad Sense Network partners that contract with Google to place a Google search box on their websites to allow a website's users to perform search queries using keywords from a website they have visited.  Based on the search query typed into the search box,  Google  will  display  Google  search  results  along  with  related  Adwords advertisements and Google shares the revenue with the site owner.

15.    As Google states:  **"Ad Sense for search** allows website publishers to provide

Google web and site search to their visitors, and to earn money by displaying Google ads on the search results pages."

> **When people search the web from your site, the search results page show up with ads. And you get paid when people click on these ads.**
>
> **https://www.google.com/adsense/login/en_US/?hl=en_US&sourceid=aso&subid=ww-en_US-et-ads-r3_b_top&medium=link&gsessionid=jjUuHkGH_dk**

16.    Defendant Google explains on its website, the: "(g)lobal search network which includes, but is not limited to, Google Product Search and Google Groups and the following entities:

17.    This is how Google defines a "search".

The Essentials of Google Search

a.    Doing a search on Google [or a site in the Search Network] is easy.  Simply type one or more search terms (the words or phrase that best describe the information you want to find) into the search box an hit the 'Enter' key or click on the Google Search button.

In response, Google produces a results page: a list of web pages related to your search terms, with the most relevant page appearing first, then the next, and so on. http://www.google.com/support/bin/static.py?page=searchguides.html&ctx=basis

18.    ***Ad Sense for Mobile:*** Ad Sense Network partners that contract with Google to allow AdWords, Advertisements to be placed/displayed on mobile WebPages under their ownership, license, registration, and or other control.

19.    ***Ad Sense for Video:*** Ad Sense Network partners that contract with Google to allow AdWords Advertisements to be placed/displayed within video streams under their ownership, license, registration, and or other control.

20.    ***Ad Sense for Domains:*** Ad Sense Network partners that contract with Google to allow AdWords Advertisements to be placed/displayed on parked domains entered into the address bar under their ownership, license, registration, and or other control, based on the meaning of the "domain names". Google explains on its website: Ad Sense for domains allows domain name registrars and large domain name holders to unlock the value in their parked page

inventory. Ad Sense for domains delivers targeted, conceptually related advertisements to parked domain pages by using Google's semantic technology to analyze and understand the meaning of the domain names.   Our program uses ads from the Google AdWords network, which is comprised of thousands of advertisers worldwide and is growing larger everyday.   Google Ad Sense for domains targets web sites in over 25 languages, and has fully localized segmentation technology in over 10 languages, and has fully localized segmentation technology in over 10 languages.   http://www.google.com/domainpark/index.html

21.   ***Ad Sense for Errors:*** Ad Sense for Errors program serves AdWords Advertisements when an internet user enters an unregistered URL or search query in their browser's address bar.

C.   **Google AdWords Program**

22.   The Google AdWords program, launched in 2000, is Google's primary advertising program. It offers participants an opportunity to place advertisements through Google's expansive network that reaches up to 86% of worldwide Internet users.

23.   AdWords advertisements appear throughout the Google Network alongside or above search results, on web pages, in e-mail, blogs, in video, and/or otherwise on Google or the Google Network (collectively referred to herein as "Advertising Properties").

24.   AdWords advertisements are offered in a variety of formats including, but no limited to, text ads, image ads (banner ads), flash ads, and video ads.

25.   Google states that advertisements are displayed throughout the Google Network based on factors such as: how much an advertiser bids, the quality of the advertiser's ad, and how many other people want to bid on a particular keyword.

26.   AdWords ads can be displayed on the: (1) Search Network and/or (2) Content Network.

27.   Search Network Ads are targeted and displayed based on a user's exact search query terms and keywords. Content Network Ads are targeted and displayed based on content themes.

28.   Google defines its "Content Network" as follows:

The Google content network comprised hundreds of thousands of high-quality websites, news pages, and blogs that partner with Google to display targeted AdWords ads. When you choose to advertise on the content network, you can expand your marketing reach to targeted audiences—and potential customers—visiting these sited every day. There's no larger network for contextual advertising in the world. As an AdWords advertiser, you can hand-pick sites from the content network or simply let Google's proven ad targeting display your ads on the website pages most relevant to your products and services.

https://adwords.google.com/select/afc.html

29.     Google, at

https://adwrods.google.com/supprot/bin/answer.py?answer=6119&topic=82 provides the

following representations about, and example of, ad placement on the content network:

**Ads on the content network**

AdWords ads on content sites are targeted to the content and URL or each page. In the screenshot below you can see how the ads are displayed on a content page and the ads are directly relevant to the content of the page.

30.     Google partners participating in the Ad Sense program are required to adhere to the following policies. "NO Google ad may be placed on any non-content=based pages." In addition, no Google ad is allowed to be placed on web pages generated "specifically for the purposes of showing ads, whether or not the page content is relevant."

https://www.google.com/adsense/support/bin/answer.py?answer=78182&sourceid=aso&s ubid=ww-ww-et-asui&medium=link

31.     Google     states     the     following     about     the     "Search     Network":

**The search network**

Your ads may appear alongside or above search results, as part of a results page as a user navigates through a site's directory, or on other relevant search pages. Our global search network includes Google Product Search and Google Groups and the following entities:

https://adwords.google.com/support/bin/answer.py?answer=6119

32.     Regarding the Search Network, Google tells Advertisers: "Ads are targeted based

7

on a user's search terms. For example, if you search for 'Italian coffee' on Google, you'll see related coffee ads next to the search results."

http://adwords.google.com/support/bin/answers.py?hl=en&answer=6104

33. All new keyword campaigns are automatically included into both the Search and Content networks.

34. An AdWords advertiser can exclude an ad campaign from the Search and/or Content Networks, however until May 2008, there was no way to categorically exclude "parked sites" or Ad Sense for Errors pages from a campaign.

35. In fact, until May 2008, Google actively concealed the identity of parked pages and error pages that displayed AdWords advertisements.

D. **Inclusion of Low-Quality Parked Domains and Error Pages in the Google Networks**

36. Google includes millions of low-quality parked/undeveloped websites ("sham sites") in the Google Search and Content Networks, despite the fact that said sites do not contain any content and are not search.

37. Until May 2008, Google actively concealed the monetization, with AdWords advertisements, of low-quality, parked and error pages.

38. Google includes web pages displayed through the AdWords for Errors program in the "Content Network," despite the fact that the pages contain no content. Google displays AdWords ads on its Ad Sense for Errors web pages when an Internet user enters an unregistered URL in their browser's address bar.

39. AdWords advertisers in the Google "Content Network" may have their ads displayed not only on "content site," but also on parked/non content sites, Ad Sense for Domains, and Ad Sense for Error pages.

40. AdWords advertisers in the Google "Search Network" may have their ads displayed not only on "search sites," but also on parked/non-content sites and Ad Sense for Domains pages, where someone only typed in a domain name in to the address bar

8

and/or no search query from a search box occurred.

41.    Google intentionally includes the low-quality parked/undeveloped sites, Google Ad Sense for domains and error pages in the Google Search and Content Networks in order to inflate its reported search statistics, as well as to maximize revenue from internet traffic by providing substantially more advertising venues (Internet locations) and more billed "clicks" or "impressions" for AdWords advertisements.

42.    Google actively misleads AdWords advertisements and otherwise conceals the fact that many of its advertisements appear on low-quality parked/non-content sites and Error pages, by among other things:

a.    Repeatedly affirmatively representing on its website, and in other communications, that AdWords advertisements appear on "High-quality" sites;

b.    Failing to reference the Ad Sense for Domains and Ad Sense for Errors pages in its definition of the Google Network or the main Ad Sense Pages;

c.    Until May 2008, failing to provide any specific identification of low-quality, parked/non-content, Ad Sense for Domains and Error pages in its Content Network performance report;

d.    Even though the present, failing to identify the specific parked/undeveloped and other Ad Sense for Domains sites monetized through its "Search Network" on its AdWords advertisers' performance reports;

e.    After it commenced reporting in May 2008, Google re-characterized many of the parked/undeveloped sites and Ad Sense for Domains pages as "Search Network" sites to avoid specifically reporting monetization of those sites and further conceal their conduct from AdWords advertisers;

f.    Misrepresenting to AdWords advertisers the real reason that parked/undeveloped sites and Ad Sense for Domains have equal or better click through rates than traditional content and search sites.    Google fails to disclose such pages and only shows ads on the parked/undeveloped sites. In doing this, Google violates its own terms and conditions of how ads can be displayed on the Search and Content Networks, further misleading advertisers;

9

g. Knowingly provided AdWords advertisers false definitions of the Ad Sense for Domains Network, and misrepresented to advertisers what the Ad Sense for Domains Network.

h. Otherwise making affirmative misrepresentations, fraudulent statements, and omissions of material fact to AdWords advertisers and the general public regarding the AdWords and Ad Sense programs.

43. Google induces advertiser participation in AdWords by emphasizing the "high-quality" of site on which AdWords ads will be placed and intentionally concealed and omitted Google's practice of placing ads on low-quality parked Ad Sense for Domains sites or on copyright, and other intellectual property laws.

44. Google's AdWords website, which potential customers view before clicking the "Start Now" button sigh up for the program, includes the following statement:

> Expand your reach through the content network with hundreds of thousands of high-quality websites, news pages, and blogs that partner with Google to display AdWords ads, the Google content network can reach users all over the web to help you drive conversions. Choose from text, image, and video formats to communicate your message.

45. Google intends to and has affirmatively mislead AdWords advertisers, and otherwise omitted material facts, regarding the composition of the Content and Search networks.

46. Google makes numerous affirmative representations and promises, to AdWords advertisers about participation in the AdWords program, including but no limited to the following:

a. By advertising on sites in the Google "Content Network": "Your ads appear on sites that are highly relevant to your products and services. As a result, you're already aligned wit the interests of people visiting those site."

https://adwords.google.com/select/afc/cycle.html

b. All web sites and products are reviewed and monitored according to Google's

10

rigorous standards, so as the network grows, your AdWords ads will continue to appear only on high quality sites and products.

https://adwords.google.com/support/bin/answer.py?answer=6104&query=Google+Network&topi c=&type=f&%onclick= Similarly, Google states: "To ensure overall quality, all sites are carefully reviewed before allowed in the Google Network."

c.      Google represents that a number of "tools" offer automated optimization of an AdWords ad campaign and will save the AdWords advertisers money, including but not limited to: AdWords Budget Optimizer, Site exclusion tool, performance reporting tools contextual targeting tools, and AdWords Discounter.

47.     Google, despite its representations to AdWords advertisers, uses its automated tools to maximize its own revenue and for its own financial gain. Google misleads AdWords advertisers to utilize the tools with false promises that the tools will benefit the AdWords Advertiser.

48.     For example, Google offers the "AdWords Budget Optimizer" tool that promises to get AdWords advertisers the most clicks for their advertising dollars. In fact, Google uses that tool to maximize its own revenue by displaying AdWords ads on many low-quality sites that generate costly low-quality clicks, such as Ad Sense for Domains pages.

E.      **Monetization of AdWords Advertisements**

49.     Google generates money when it "monetizes" AdWords advertisements by displaying them throughout the Google Network and then charging AdWords advertisers through one of its two primary pricing regimes: Cost Per Click ("CPC") and Cost per Thousand Impressions ("CPM").

50.     Google generates revenue under the CPC regime when:
        a.  Google displays the AdWords advertisements on the Google Network;
        b.  An Internet user "clicks" on the advertisement; and
        c.  Google charges corresponding AdWords advertiser a "click fee."

51.     Google generates revenue under the CPM regime by charging advertisers a flat rate based on display of impressions, regardless of whether an Internet user "clicks" on any

11

impression.

52.     Under the CPC pricing regime, Google places ads through the Google Network and the AdWords advertiser is charged "per click," each time an ad is clicked.

53.     Under the CPM pricing regime, an Advertiser pays Google a set fee per 1000 impressions displayed.

54.     CPC or CPM pricing available on placement targeted ads. Only CPC pricing is offered for contextually taCPC advertisement are displayed when an Internet user enters search terms into the Google Search engine. The order in which the AdWords advertisements appear depends on the amount of the bid and the "quality score" of all ads shown for a given search targeted ads.

55.     CPC advertisement is displayed when an Internet user enters search terms into the Google Search engine. The order in which the AdWords advertisements appear depends on the amount of the bid and the "quality score" of all ads shown for a given search.

56.     AdWords advertisers can choose to pay a different price when ads appears on the content network versus when it appears it appears on Google or a Google search network site ("content bidding").

57.     Google represents to AdWords advertisers that the "AdWords smart pricing feature" will optimize their advertising dollars, because it: "(w)ill adjust the cost of your content network click based on the content network site's relevance to your own site. For example, if our data shows that a particular click from a content network page is less likely to turn into a sale, registration, or other desired behavior, we'll automatically reduce the price you pay for that click." https://adwords.google.com/select/afc/pricing.html

58.     AdWords advertisers can set a maximum price that they are willing to pay per click, a maximum daily budget, and/or use the "AdWords Budget Optimizer" that Google promises will "(t)ry and find you the most clicks possible within your budget."

59.     Google represents that is always actively working for AdWords advertisers to get them the lowest advertising rates, with tools such as the "AdWords Discounter" which Google affirmatively represents "(a)automatically reduces the actual cost-per-click (or CPC) you pay the

lowest cost needed to maintaining your ad's position.  The AdWords Discounter keeps working no matter which method of display or bidding you choose."

> https://adwords.google.com/support/bin/answer.py?answer=6084&topic=15

60.     Aggregate paid clicks on Google Network sites increased by 65% from year-end 2005 through year end 2006 (*See* 2006 Google 10K at 43).

F.     **Ad Words Contracts, Guidelines, and Policies**

61.     In order to participate in AdWords, advertisers must electronically accept the following contracts:  https://adwords.google.com/select/tsandcsfinder. ("AdWords Contract") and http:www.google.com/accounts/TOS ("Google Universal Contract"), as well as all general and Google policies, procedures and regulations such as: Editorial Guidelines (adwords.google.com/select/guideslines.html), Google Privacy Policy (www.google.com/privacy.html) and Trademark Guidelines (www.google.com/permissions/guidelines.html),  and Google and Partner ad specification requirements (collectively, **"Policies"**). Olabode and each member of the class has entered into said contracts with Google. ***See AdWords Contracts, attached hereto as Exhibit "A."***

62.     Google is contractually obligated to act in good faith and deal fairly with AdWords advertisers.

63.     Google is further obligated to act in good faith and deal fairly with AdWords advertisers implementing and enforcing its self proscribed policies and guidelines.

64.     Google is obligated to discharge its contractual obligations without violating California, United States, and International cyber squatting, typo squatting, cyperspiracy, trademark, copyright, and other intellectual property laws.

65.     Google controls the Internet advertising market through restrictive agreements with many of its Google Network participants that forbid those participants from displaying any advertisements on their sites other than Google advertisements.  Therefore, in order to gain

13

access to millions of Internet advertising properties, Olabode and the class were left with no choice but to contract with Google fro participation in the Google AdWords advertising program.

66. Google requires, as a condition for participation in the AdWords advertising program, and to gain access to the Google Network properties that purportedly reaches 86% = of world-wide internet users, that AdWords advertisers consent to and enter into electronic contracts with Google that are displayed on Google's website.

67. AdWords advertisers are required to agree to comply with Google's rules, regulations, guidelines, and other policies. In fact, several of the policies are explicitly incorporated into the contracts.

68. Olabode and the class have all entered into the same standards contracts with Defendant Google, as a condition of participation in Google's AdWords advertising program. Olabode and the class are subject to the same, standard written policies, procedures, and guidelines published by Google on its website.

69. Google unilaterally drafts all contracts, policies, procedures, and guidelines governing the relationship between Google and AdWords advertisers, as well as any and all amendments and modifications.

70. Google places all AdWords advertisements on the Google Network.

71. Pursuant to 2 of the Google Inc. Advertising Program Terms:

"Google Customer understands and agrees that ads may be placed on (y) any content or property provided by Google (**"Google Property"**), and, unless Customer opts out of such placement in the manner specified by Google, (z) any other content or property provided by a third party (**"Partner Property"**). Customer authorized and consents to all such placements."

72. Google is obligated pursuant to the terms of 2, to act in good faith and deal fairly with Google AdWords advertisers in discharging the placement of AdWords Advertisements.

73. Specifically, Google has an obligation to display advertisements on legitimate

14

1  sites that Google and/or its "partners" are legally entitled to utilize and monetize.

2  74.  Google breaches its contractual obligations to Olabode and the class when it
3  displays and/or charges them for their AdWords advertisements displayed on sites that Google is
4  not legally entitled to use, sites that violate trademark law, sites that violate cyber squatting law,
5  sties that violate cyberspiracy laws, sites that violate copyright laws, and sites that violate other
6  California, United States and/or International laws.

7  75.  Google breaches its contractual obligations to Olabode and the class when it
8  displays and/or charges them for their AdWords advertisements displayed on sites that violate
9  Google's own written and published guidelines, policies, and rules.

10  76.  Google breaches its contractual obligations to Olabode and the class when it
11  overcharges them for AdWords advertisements.

12  77.  Google breaches its contractual obligations to Olabode and the class when it
13  includes millions of low-quality sites and Error pages in its "Content" and "Search" Networks.

14  78.  Google breaches its contractual obligations to Olabode and the class when it
15  utilizes its tools and technologies for their own pecuniary gain and to the detriment of Olabode
16  and the class, while inducing Olabode and the class to utilize tools with false representations that
17  the tools will optimize/maximize the value of their participation in AdWords.

18  79.  Google knowingly and intentionally displays, and charges Olabode and the class,
19  for Ad Words advertisements on:

20
21  a.  Low-quality parked/non-content sites and Error pages;

22  b.  Sites that it knows violates cyber squatting, typo squatting, cyberpiracy,
23  trademark, copyright and other intellectual property laws;

24  c.  Sites that it knows violates Google's own written and published policies,
25  guidelines, and rules such as gambling sites and pornography related sites;

26  d.  Sites that it knows it is not legally entitled to use; and

27  e.  Sites that neither itself nor its partners are legally entitled to use or
28  monetize, and in fact whose use is in violation of United States and

International cyber squatting, trademark, copyright and other laws ("illegal sites").

## G.    Google Representations, Promises and Communications

**80.**    Google makes specific affirmative written representations and promises to Plaintiff, the putative class, and the general public which are located on its website, www.google.com, as well as, specifically contained in the following documents:

Google's Universal

http://www.google.com/accounsts/TOS

Terms of Service

http://www.google.com/tm_complaint.html.

Google's Copyright and Trademark policies

http://www.google.com/dmca.html.

**Google Ad Sense Online Standard Terms and Conditions**

https://www.google.com/adsense/localized-terms

Google Ad Sense Program Policies

https://www.google.com/adsense/support/bin/answer.py?answer=4818      2

Google Webmaster Guidelines

http://www.google.com/webmasters/guidelines.html.

Google Landing Page and Site Quality Guidelines

http://adwords.google.com/support/bin/answer.py?answer=46675&hl=en

Ad Sense For Video Program Policies

https://www.google.com/AdSense/support/bin/answer.py?answer=73987

Ad Sense for Mobile Content Program Policies

https://www.google.com/AdSense/support/bin/answer.py?answer=71600

81.    Google knowingly and intentionally uses the written representation to induce AdWords advertisers to contract with Google for participation in the AdWords advertising

16

1 program. Google intends Plaintiff, the class and the public to rely upon and act in reliance upon
2 its representations on www.google.com and other publicly available documents and
3 communications. Plaintiff and the class reasonably expect Google to act in accordance with
4 these representations.

5      82.     Google knows that its website, and other public communications are false,
6 misleading, and/or omit material facts and information.

7      83.     Google intentionally and knowingly continuously violates its written policies,
8 guidelines, policies and rules in operating the Ad Words and Ad Sense programs. It does so for
9 its own ill-gotten commercial gain, in ways such as but not limited to:

10      a.     Intentionally displays and charges Plaintiff and the class for "clicks" on
11 advertisements placed on websites that violate Google's written contracts, guidelines, policies,
12 and public representations, such as sites generated solely for the purpose of displaying Ad Words
13 Advertisements and sites violating trademark and copyright law.

14      b.     Intentionally displaying and charging Plaintiff and the class for "clicks" on
15 advertisements placed on low-quality and undisclosed websites participating in the AdSense for
16 Domains and Adsense for Errors programs:

17      c.     Overcharging Plaintiff and the class for advertising through the AdWords
18 program;

19      d.     Intentionally hijacking and diverting Plaintiff and the class Member's legitimate
20 internet traffic to sham infringement websites, and then requiring Plaintiff and the class to pay
21 "click" ransoms to get their own internet traffic back. For example, a user intending to visit the
22 retailer Target's legitimate website might mistype it as "www.wwwtarget.com." At the "www"
23 infringing site, the internet user clicks the legitimate Target ad, the user is taken to the true
24 Target website, but Target has to pay a "ransom" in the form of a "PPC" click fee in order to get
25 their intended internet traffic back for Google;

26 e. Displaying, and charging for, Ad Words advertisements in spyware programs; and

27      f.     Failing to utilize targeting technology to ensure that AdWords ads are "highly
28 targeted," but rather placing and displaying AdWords ads are "highly targeted," but rather placing

17

1 and displaying AdWords ads in a random fashion.

2     84. Without their knowledge or consent, advertisers who joined Google's AdWords
3 program have had their ads place on pages contained in AdSEnse for Domains, on parked sites,
4 and AdSense for Errors, or error pages. The quality of these sites as an advertising medium is
5 substantially lower than sites on the rest of Google's network, and many of the sites directly
6 violate United States and International trademark, copyright, and other intellectual property laws.

7     85. For example, Google routinely and intentionally charges Plaintiff and class
8 members for clicks on advertisements improperly displayed on parked domains that infringe
9 distinctive and valuable marks, for example "www", "http" and "com.com" domains, such as"
10 bedbathandbeyondcom.com; chevycom.com; chryslercom.com; cocacolacom.com
11 discovercreditcardcom.com; disneylandcom.com; disneyworldcom.com; ebaumsworldcom.com
12 espncom.con; fordmotorscom.com; geicocom.com; homedepotcom.com; ibmcom.com;
13 ikeacom.com; jetblucom.com; jcpenney.com; kohlscom.com; kmartcom.com;
14 mcdonaldscom.com; musiciansfriendcom.com; nascarcom.com; oldnaycom.com;
15 pizzahutcom.com randcom.com; saabcom.com scottradecom.com; travelocitycom.com;
16 usairwayscom.com volkswagencom.com;xangacom.com. httpaarp.com, httpabc.com;
17 httpamsouthbank.com; httpautotrader.com; httpbankofamerica.com; httpbellsouth.com;
18 httpbestbuy.com; httpblackplanet.com; httpbordersbooks.com; httpbratz.com;
19 httpcareerbuilder.com; httpcapitalone.com; httpcapitolone.com; httpcarmax.com;
20 httpcartonnetwork.com; httpcartoonetwork.com; httpcartoonnetwork.com httpchevrolet.com;
21 httpchevy.com httpcircuitcity.com; httpcisco.com; httpciti.com httpcitibank.com;
22 httpciticard.com and httpciticards.com.

23 'WWWAMERICANAERLINES.COM";

24 "WWWAMERICANAIRLINESARENA.COM";

25 "WWWAMERICANANIAGARA.COM"; "WWWAMERICANARLINES.COM";

26 WWWAMERICANCRAFTTSMANWIN.COM"; "WWWAMERICANCURVES.COM";

27 WWWAMERICANFUND.COM"; "WWWAMERICANFUNDS.COM";

28 "WWWAMERICANGREEETING.COM"; "WWWAMERICANHEARTASSO

18

1  CIATION.COM"; "WWWAMERICANHOMEPARTNERS.COM";

2  "WWWAMERICANMEADOWS.COM"; "WWWAMERICANTRANSAIR.COM";

3  "WWWAMERICASFIRSTHOME.NET"; "WWWAMERIJET.COM";

4  "WWWAMIGOSADVENTISTAS.ORG"; "WWWAMIN.ORG"; "WWWAMITI.COM";

5  "WWWAMORPOSTALES.COM"; "WWWAMOUR.COM";

6  "WWWAMROKHALED.COM", "WWWAMTRACT.COM

7  "WWWAMWAYINDIA.COM", "WWWANALOG.COM"; "WWWAND.COM";

8  "WWWANGELPIN.NET"; "WWWANGONOTICIAS.COM".

9  86. Google includes millions of parked domains and error pages that have little to no

10  content, and that result in practically zero conversions, in both its Content Network and its Search

11  Network.

12  87. Given the illegality and/or low quality of these parked domain and error page sites,

13  Plaintiff and the class would not agree to spend their advertising budgets on these distribution

14  networks. However, Google designed its network in such a way that it was impossible to opt out

15  of the AdSense for Domains and/or AdSense for Errors programs.

16  88 Even after providing limited ability to opt-out of the AdSense for Domains and

17  AdSense for Errors programs, Google still continues to conceal from the Plaintiff and the class

18  that those networks contain millions of illegal sites that infringe trademark, copyright and

19  intellectual property laws.

20  89. Google's practice of including parked domains within the Search Network is

21  misleading, since not actual searches are performed on these pages. Likewise, Google's practice

22  of including parked domains and error pages within the Content Network is also misleading,

23  since most of these sites include little or no content.

24  90. Google violates its promise and duty to not place ads in pernicious spyware

25  programs. Google has done just that, and has charged AdWords advertisers for every click made

26  on spyware pop-ads.

27  91. Google also represented that its advertisement would be "highly targeted."

28  When, in fact, Google enters into syndication agreements with companies that show random ads

1 | that is the opposite of "highly targeted."

2 | 92.    Google had otherwise acted unfairly, in bad faith, and in a manner that is

3 | directly contrary to the interests of AdWords advertisers, and in its own pecuniary interest, in

4 | discharging its duties and obligations to AdWords advertisers.

### H.    Contextual Targeting Technology

93.    Google promises AdWords advertisers that it has sophisticated "Contextual Targeting Technology" that: "(c (an automatically match your ads to WebPages in our content network that are most relevant to your business. For example, an ad for a digital camera may show up next to an article reviewing the latest digital camera."

**https://adwords.google.com/select/Login**

94.    Google provides the following explanation and example of how "contextual targeting" technology is used to maximize and AdWords ad placement:

A.    Google continually scans the millions of pages from the content network to look for relevant

B.    matches with your keywords and other campaign data. When we find a match, your ad becomes eligible to rum on that page. Google's extensive web search and linguistic processing technology can decipher the meanin of virtually any content network page to ensure we're showing the most relevant ads.

C.    Consider the following example:

Healthy News

April 18, 2003

Every American enjoys their cup of java in the morning. A recent study found over 75% of all Americans "need" a cup of coffee to get their day started.

If you have a page about Java the coffee, our technology knows that it's not about Java the programming language. And you get ads about coffee.

98.    The site exclusion tool still does not provide a mechanism by which

20

1  ADWords advertisers can "exclude" illegal sites from a campaign, such as those that

2  infringe trademarks, copyrights, and other intellectual property laws.

3       99.  The site exclusion tool still does not provide a mechanism by which

4  AdWords advertisers can "exclude" sites and pages that fail to meet Google's published

5  guidelines,

6  policies, and procedures (i.e., gambling sites, pornography sites, etc.).

7

8  I.    Performance Reporting

9       100.  On Google's AdWords promotional/marketing pages, which are shown to

10  prospective customers prior to signing up for AdWords, Google states the following

11  under "Reach More Customers".

12

13       Measure and optimize your results With the Placement Performance Report, you
         have visibility into where all your ads appear. Review your ad's performance on a
14       site-by-site basis to see impression, click, cost, and conversion data, and use this
         data to identify well-performing sites to target more aggressively and low-value
15       placements that require content optimization or exclusion.

16  Http:://adwords.google.com/select/Login

17       101.  Google's Placement Performance Reports provide limited information only on

18  sites included in Google's Content Network.  No such reports have ever been available for

19  Google's Search Network.

20       102.  Google does not automatically provide these reports to it AdWords customers.

21  Rather, the reports are generated only for AdWords advertisers that locate the appropriate page

22  on Google's website and have the report generated.

23       103.  In June 2007, Google first began offering limited data on the placement of

24  AdWords ads on parked and error pages. However, until May 2008, the reports did not provide a

25  specific (site-by-site) list of the parked and error pages where an ad appeared, rather the report

26  simply aggregated the data into two lump-sum line items, called "Domain ads" and "Error page

27  ads."

28       104.  At no time prior to June 12, 2007, did Google ever disclose to AdWords

21

1 advertisers that low-quality parked domain and error pages were included in both its Content and
2 Search Networks.

3      105.    Without a site-by-site listing of which parked domains and error pages their ad
4 was placed on, advertisers could not adjust their advertising budgets on these sites. Nor could
5 they exclude some or all parked domains and error pages from receiving ad placement. By
6 aggregating this information, Google effectively prohibited advertisers from utilizing means of
7 opting out of domain or error page ads using the AdWords interface.

8      106.    In response to complaints by advertisers, on May 2, 2008, Google posted a
9 message titled "Where did I par?" on its AdWords Agency Blog announcing that it had finally
10 changed the policy and was providing site-by-site data for parked domains.

11      107.    Katharine Allen of Google's Agency Team wrote: "We recently added a new level
12 of detail to Placement Performance reports to answer this question. Placement Performance
13 reports five site-by-site performance metrics for the sites where your ads appeared within
14 Google's content network. Now, rather than seeing one consolidated entry for all parked
15 domains in your reports, you'll see separate rows displaying performance statistics for individual
16 parked domains."

17      108.    Prior to May 2, 2008, Google completely failed to disclose domain names, IP
18 addresses, and associated performance data of parked domain and error pages included in its
19 Content Network. Google has never, and still does not disclose this data for parked domain and
20 error pages included in its Search Network.

21      109.    Google's conduct, as alleged herein, has injured the general public and
22 contravenes well-established public policy.

23      110.    Google's conduct, as alleged herein, has distorted the Internet search system for
24 public Internet users and ahs made it more difficult and time-consuming for Internet users to
25 locate legitimate websites on the Internet, as they are repeatedly diverted through parked
26 advertising pages that simply provide Google with "click" revenue.

27      111.    As a direct and proximate result of Defendant's conduct alleged herein, Plaintiff
28 and the class were and continue to be unlawfully charged for services that Defendant did not

1  provide or that Plaintiffs and the class did not agree to pay for.

2      112.   As a direct proximate result of Defendant's conduct alleged herein, Plaintiff and

3  the class were to continue to be charged grossly inflated amounts for advertising through the

4  AdWords program.

5      113.   As a direct and proximate result of the inclusion of illegal a low-quality sites in

6  the Google Network, Olabode and the class paid more for advertising and the cost of

7  participation in the AdWords program.

8      114.   As a direct and proximate result of Defendant's conduct alleged herein, Olabode

9  and the class have otherwise suffered injury and damage to their business and property.

10

11  **II.    CLASS ALLEGATIONS**

12                          **FIRST CAUSE OF ACTION**

13                              (Breach of Contract)

14      115.   Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(c) and

15  (b) (3) on behalf of himself and the following class ("the class"):

16          All persons or entities located within the United States who, within four years

17          preceding the filing of this Complaint, contracted for and participated in

18          Google's AdWords program.

19      116.   Excluded from the class are governmental entities, Defendant, any entity in which

20  Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal

21  representatives, employees, co-conspirators, successors, subsidiaries, and assigns.

22      117.   Also excluded from the class are any judges, justices, or judicial officers presiding

23  over this matter and the members of their immediate families and judicial staff.

24      118.   Upon information and belief, Plaintiff alleges that the total number of class

25  members is at least in the hundreds of thousands and that the class members are geographically

26  dispersed across the United States. Consequently, joinder of the individual class members would

27  be impracticable.

28      119.   There are many questions of law and fact common to the representative Plaintiff

23

and the proposed class, and those questions substantially predominate over any individualized questions that may affect individual class members. Common questions of fact and law include, but are not limited to, the following:

- Whether Google's representations regarding AdWords were false or misleading;

- Whether Google's breached its Contracts with Plaintiff and the class;

- Whether Google, in violation of applicable law and its own stated policy, charged Plaintiff and the class members for ads that were placed on parked domain and error page websites;

- Whether Google engaged in unfair, unlawful and/or deceptive business practices;

- Whether Google failed to disclose material facts about its AdWords program; and

- Whether or not the Plaintiff and the class members have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relied that should be provided.

120. Plaintiff's claims are typical of the claims of the class members. Plaintiff and all class members have been similarly affected by Defendant's common course of conduct.

121. Plaintiff will fairly and adequately represent and protect the interest of the class. Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the class. Neither Plaintiff nor his counsel has any interests adverse to those of the proposed class.

122. Plaintiff and the class members have suffered, and will continue to suffer, as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy, because joinder of all class members would be impractical.

123. Even if individual class members had the resources to pursue individual litigation, it would be burdensome to the courts in which the individual litigation would proceed. Individual litigation would cause delay and undue expense to all parties affected by Defendant's common course of conduct.

24

124.    The class action device will allow a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single form. The maintenance of this action as a class action will conserve the resources of the parties and of the judicial system, and will protect the rights of the class members.

125.    Furthermore, for many, if not most, class members, a class action is the only feasible mechanism for legal redress for the harm alleged.

126.    Adjudication of individual class members' claims against the Defendant would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

## SECOND CLAIM FOR RELIEF

(Breach of Covenant of Good Faith and Fair Dealing)

134.    Plaintiff re-alleges the preceding paragraphs as if fully set forth herein, and to the extent necessary is plead in the alternative.

135.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as has lost money or property as a result of Google's actions as set forth above.

136.    Class members have suffered injury in fact and have lost money or property as a result of Google's actions as se forth above.

137.    Google had a duty to act in good faith and deal fairly with Plaintiff and the class in connection with said contracts and its obligations in administering the AdWords program.

138.    Google breached its duty of good faith and fair dealing to Plaintiff and the class through its actions as alleged herein.

139.    As a direct and proximate result of Google's breach of the covenant of good faith and fair dealing as set forth above Plaintiff and class members have been damaged.

## THIRD CLAIM FOR RELIEF

(Violation of California Business & Professions Code Section 17200 et al. Seq. Unfair Conduct)

140.    Plaintiff re-alleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

141. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Google's actions as set forth above/

142. Class members have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above.

143. Google's actions as alleged in this complaint constitute "unfair" conduct within the meaning of California Business and Professions Code sections 17200 *et seq.*

144. Google's business practices, as alleged herein, are "unfair" because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to it customers. Google's conduct is "unfair" because Google fails to disclose that customers' ads are placed on parked domain and error page sites, and Google does not provide an effective means for customers to exclude their ads from appearing on these sites. In fact, until March 2008, Google provided no means at all for customers to exclude their ads from appearing on these sites.

145. As a result of Google's "unfair" conduct, Plaintiff and class members expended money on advertising that they would not otherwise have spent, and received less value for their advertising dollars than they should have received.

146. As a result of Google's "unfair" conduct, Plaintiff and class members have unknowingly been charged and paid for advertising on sites that actually infringe upon the class member's own trademarks.

147. Google's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since Google continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical oppressive, unscrupulous and/or substantially injurious to its customers.

148. Pursuant to Cal. Bus. & Prof. Code 17203, Plaintiff and the class seek an order of this court enjoining Google from continuing to engage in unlawful, unfair, and/or deceptive business practices and any other act prohibited by law, including those acts set forth in this complaint.

149. Plaintiff and the class also seek an order requiring Google to make full restitution

1  of all moneys it has wrongfully obtained from Plaintiff and the class, along with all other relief

2  allowable under Cal. Bus. & Prof. 17200 *et seq.*

## FOURTH CLAIM FOR RELIEF

(Violation of California Business & Professions Code Section 17200 et al. Seq. – Fraudulent

Conduct)

150.    Plaintiff re-alleges the preceding paragraphs as if fully set forth herein and, to the extent

necessary, pleads this cause of action in the alternative.

151.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact

10  and has lost money or property as a result of Google's actions as set forth above.

11  152.    Class members have suffered injury in fact and have lost money or property as a

12  result of Google's actions as set forth above.

13  153.    Google's actions as alleged in this complaint constitute "fraudulent" conduct

14  within meaning of California Business and Professions Code 17200 *et seq.*

15  154.    Google's business practices, as alleged herein, are "fraudulent" because they are

16  likely to deceive consumers, including Plaintiff and class members. Google fails to disclose all

17  material information to AdWords advertisers concerning the types of sites on which their ads will

18  be displayed, and affirmatively conceals the fact that low-quality parked domains and error pages

19  are included in both its Content Network and its Search Network. Google failed to disclose class

20  members advertisements would also appear on deceptive domains that would violate the class

21  members own trademarks resulting in them paying for "advertising" to receive traffic from a user

22  who intended to reach the class member. Google failed to disclose to advertisers, including

23  Plaintiff and the class, that, until March 2008, they would have no way to exclude their ads from

24  appearing on these sites. Google continues to fail to provide and effective and adequate method

25  of excluding ads from these sites, or to adequately disclose that any method of excluding ads

26  from these sites exists at all.

27  155.    As a result of Google's "fraudulent" conduct, Plaintiff and class members

28  expended money on advertising that they would not otherwise have spent, and received less value

27

for their advertising dollars than they should have received.

156. Google's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since Google continues to market and sell its products in a manner is likely to deceive customers.

157. Pursuant to Cal. Bus. & Prof. Code 17203, Plaintiff and the class seek an order of this court enjoining Google from continuing to engage in "fraudulent" business practices and any other act prohibited by law, including those acts set forth in this complaint.

158. Plaintiff and the class also seek an order requiring Google to make full restitution of all moneys it has wrongfully obtained from Plaintiff and the class, along with all other relief allowable under Cal. Bus. &Prof. Code 17200 *et seq.*

## FIFTH CAUSE OF ACTION

(Violation of California Business & Professions Code Section 17200 et al. Seq.-Unlawful Conduct)

159. Plaintiff re-alleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

160. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Google's actions as set forth above.

161. Class members have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above.

162. Google's actions as alleged in this complaint constitute an "unlawful" practice within the meaning of California Business and Professions Code 17200 *et seq.* because Google's actions are "unfair" and "fraudulent," as alleged above, and because they violate California Business and Professions Code 17500 *et seq.,* which proscribe false advertising, as alleged below.

## SIXTH CAUSE OF ACTION

(Unjust Enrichment)

28

172. Plaintiff re-alleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

173. Through the actions described above, Google has received money belonging to Plaintiff and the class through fees collected from ads placed on parked domains and error websites, even though reasonable customers would have believed that they were not paying for and would not be charged for ads placed on such websites.

174. Google has also reaped substantial profit by collecting and retaining revenue from Plaintiff and the class generated through clicks generated through ads that were displayed on such websites.

175. Google has received money belonging to Plaintiff and the class resulting from clicks on these ads.

176. As a direct and proximate result of Google's misconduct as set forth above, Google has been unjustly enriched.

177. Google should not be permitted to keep sums that Google has unjustly received as a result of its actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Sonya Olabode and the class pray for relief as follows:

a. That the Court determine that the claims alleged herein may be maintained as a class action under Rule 23(a), (b) (2) and (b) (3) of the Federal rules of Civil Procedure;

b. That the Court adjudge and decree that the Defendant has engaged in the conduct alleged herein;

c. That the defendant be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining, or engaging in the unfair, unlawful, and/or deceptive practices alleged herein;

d. That plaintiff and the class members be awarded restitution, including disgorgement of profits obtained by defendant as a result of their acts to unfair, unlawful or deceptive practices and acts of unjust enrichment and breach of the covenant of good faith and fail dealing;

29

e.     That the plaintiff and class members are awarded compensatory damages and/or all other available monetary and equitable remedies for the breach of contract claims identified above;

f.     That plaintiff and the class members be awarded both pre-and post-judgment interest at the maximum allowable rate on any amounts awarded;

g.     The plaintiff and the class members recover their costs of suit, including reasonable attorneys' fees as provided by law;

h.     That plaintiff and the class members be awarded such other and further relief as may be necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues so triable.

Date:  July 23, 2009                    Respectfully submitted,


By: Reginald Terrell
_____

DONALD AMAMGBO, ESQ.
AMAMGBO & ASSOCIATES
7901 Oakport Street, Suite 4900
Oakland, CA 94621
Telephone: (510) 615-6000
Facsimile: (510) 615-6025

REGINALD TERRELL, ESQ.
THE TERRELL LAW GROUP
Post Office Box 13315, PMB #148
Oakland, California 94661
Telephone: (510) 237-9700
Facsimile: (510) 237-4616

30